**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

MICHAEL KELLAR, BENJAMIN KESTEL,
EDWARD KAWALEK, DALE MILLER,
and JOHN GALLIVAN,

     Plaintiffs,

vs.

COUNTY OF ERIE, ERIE COUNTY
SHERIFF'S DEPARTMENT, and
TEAMSTERS LOCAL 264 I.B. OF T.C.W.
and H. OF A.,

     Defendants.

Index No. 1:24-cv-00260

**MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF TEAMSTERS LOCAL 264'S MOTION FOR SUMMARY JUDGMENT**

**HAYES DOLCE LLP**
Attorneys for Defendant
Ian Hayes
135 Delaware Ave.
Suite 502
Buffalo, New York 14202
716-608-3427

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND............................................................................................... 2

argument .............................................................................................................................. 2

    I.    TEAMSTERS LOCAL 264 IS NOT PLAINTIFFS' EMPLOYER UNDER THE FMLA, AND THE UNION'S MOTION SHOULD BE GRANTED IN FULL ..................................... 2

    II.    THE MANDATORY OVERTIME PRACTICES COMPLY WITH THE FMLA, DEFEATING PLAINTIFFS' CLAIMS ...................................................................................... 7

        A.    The overtime practices comply with the FMLA.............................................................. 7

        B.    Plaintiffs' interference claim fails.................................................................................. 9

        C.    Plaintiffs' retaliation claim fails.................................................................................. 11

CONCLUSION................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**

*DeLeon v. Teamsters Loc. 802, LLC*,
  No. 20-CV-24, 2021 WL 1193191 (E.D.N.Y. Mar. 29, 2021)...................................................9

*Di Giovanna v. Beth Israel Med. Ctr.*,
  651 F. Supp. 2d 193 (S.D.N.Y. 2009)......................................................................................11

*Dolese v. Office Depot*, Inc.,
  231 F.3d 202 (5th Cir.) ............................................................................................................10

*Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*,
  691 F.3d 134 (2d Cir. 2012).....................................................................................................11

*Eckert v. United Automobile Workers Loc. Union 897*,
  No. 04-CV-538S, 2005 WL 2126295 (W.D.N.Y. Sept. 1, 2005)...............................................2

*Fraccica v. HSBC N.A. USA*,
  No. 20-CV-858-LJV-LGF, 2023 WL 7927969 (W.D.N.Y. Oct. 24, 2023) ...............................9

*Frees v. UA Local Plumbers and Steamfitters*,
  2008 WL 916970 (W.D. Wash. 2008) ........................................................................................6

*Funkhouser v. Wells Fargo Bank, N.A.*,
  289 F.3d 1137 (9th Cir.2002) ..................................................................................................10

*Lamitie v. Middlesex Hosp.*,
  380 F. Supp. 3d 197 (D. Conn. 2019).......................................................................................11

*Malone v. Securitas Sec. Servs.*,
  2015 WL 5177549 (N.D. Ill. Sept. 3, 2015) ..............................................................................5

*McIntyre v. Corning Inc.*,
  No. 15-CV-6277 CJS-MWP, 2019 WL 2140625 (W.D.N.Y. May 16, 2019) ..........................12

*Mondaine v. American Drug Stores, Inc.*,
  408 F. Supp. 2d 1169 (D. Kan. 2006).......................................................................................12

*Morgan v. Alachua Cnty.*,
  2013 WL 4780128 (N.D. Fla. Sept. 5, 2013).............................................................................5

*Potenza v. City of New York*,
  365 F.3d 165 (2d Cir. 2004)......................................................................................................11

*Rodriguez v. Bank of Am., N.A.*,
  No. 209-CV-1814PHXNVW, 2010 WL 2890219 (D. Ariz. July 21, 2010) ............................10

*Scamihorn v. General Truck Drivers*,
  282 F.3d 1078 (9th Cir. 2002) ...................................................................................................3

*Watkins v. Chicago Transit Auth.*,
  2012 WL 580751 (N.D. Ill. Feb. 22, 2012) ...............................................................................6

*Weidner v. Unity Health Plans Ins. Corp.*,
  606 F. Supp. 2d 949 (W.D.Wisc. 2009)..................................................................... 10

**Other Authorities**

29 U.S.C. § 2615(a)(1)........................................................................................................ 9

29 U.S.C. § 2615(a)(2)........................................................................................................ 9

U.S. DOL, Opinion Letter FMLA2006-1-A, 2006 WL 2714662 (January 17, 2006)................... 8

U.S. DOL, Opinion Letter FMLA2018-1-A at *2, 2018 WL 4678694 (August 28, 2018)........ 8, 9

U.S. DOL, Opinion Letter FMLA2018-1-A, 2018 WL 4678694 (August 28, 2018) ................... 9

U.S. DOL, Opinion Letter FMLA-56, 1995 WL 1036727 (March 25, 1995).............................. 8

**Regulations**

29 C.F.R. § 825.209(h) ...................................................................................................... 7

29 C.F.R. § 825.214 .......................................................................................................... 8

## PRELIMINARY STATEMENT

Defendant Teamsters Local 264 I.B.of T.C.W. and H. of A. ("Teamsters Local 264" or "Union") submits this Memorandum of Law in further support of its motion for summary judgment.

Contrary to Plaintiffs' position, the action against Teamsters Local 264 fails on its face, because it attempts to treat the Union as an employer under the Family and Medical Leave Act ("FMLA"). As this Court has held definitively, such an argument fails, and it is appropriate to dismiss claims against a labor union as the summary judgment stage. As described below, Plaintiffs' attempts to distinguish this case from the one where the Court dismissed FMLA claims against a union, and other case law doing the same, all rely on a distinction without a difference, and they fail to overcome the conclusion this action must be dismissed with respect to Teamsters Local 264 at this point.

Beyond this, Plaintiff' responses during the summary judgment phase make clear there are no disputed facts on the essential ones needed to grant Defendants' motions. The policy regarding mandatory overtime operates in the same way for all types of leave available to Sheriff's Deputies. The collective bargaining agreement between the Union and Defendants County of Erie, Erie County Sheriff's Department ("Sheriff's Office") allows for mandatory overtime, and provides for only two ways of moving to the bottom of the mandated overtime list: working at least an hour and a half of overtime in the shift where a Deputy Sheriff is mandated to perform overtime; or using one of the small number of "passes" allocated to each Deputy Sheriff by virtue of the CBA. Plaintiffs' continue to claim effectively that their use of FMLA leave should operate as a pass dozens of times over the course of every year, even though no other form of leave (or anything else) operates in that way.

1

Contrary to Plaintiffs' arguments, and setting aside their conclusory claims there are factual disputes, they unavoidably claim they were denied a benefit under the FMLA. Under relevance authority interpreting and applying the FMLA, these claims fail. For all these reasons, as described in more detail here, Teamsters Local 264 respectfully requests the Court grant Teamsters Local 264's motion for summary judgment in full, in addition to any other relief the Court deems appropriate.

## FACTUAL BACKGROUND

The relevant facts are set forth in Teamsters Local 264's original submission in support of its motion for summary judgment: its Memorandum of Law in Support of its motion, its statement of undisputed facts, and the Declarations of Brian Dickman (hereinafter "Dickman Decl.") and Ian Hayes (hereinafter "Hayes Decl."). Dkt. No. 33. In addition, the response to Plaintiffs' statement of undisputed facts further describes relevant factual issues. Dkt. No. 40.

## ARGUMENT

### I.    TEAMSTERS LOCAL 264 IS NOT PLAINTIFFS' EMPLOYER UNDER THE FMLA, AND THE UNION'S MOTION SHOULD BE GRANTED IN FULL

Teamsters Local 264, as the labor union representing Sheriff's Deputies, including Plaintiffs during their employment, is not an "employer" within the meaning of the FMLA. Therefore, the Court should enter judgment for the Union.

In *Eckert v. United Automobile Workers Loc. Union 897*, a plaintiff represented by a labor union brought an action under the FMLA against the union. No. 04-CV-538S, 2005 WL 2126295 (W.D.N.Y. Sept. 1, 2005). This Court granted the union's motion for summary judgment, on the grounds the FMLA did not count labor unions as "employers" that were subject to the statute, in contrast with similar federal statutes. *Id*. at \*9–10; *see also Scamihorn v. General Truck Drivers*,

2

282 F.3d 1078, 1081 n. 2 (9th Cir. 2002) (noting dismissal of FMLA action against labor union on same grounds). Based on this and the union in that case not being involved in the denial of FMLA leave (an issue Plaintiffs do not raise here), this Court granted the union's motion for summary judgment in full. *Id*. at *9-10.

For the same reasons, Teamsters Local 264 submits the Court should grant its motion. Plaintiffs, apparently seeing a decision by this same Court directly on point, fail in their attempts to distinguish this case from *Eckert*. They first attempt to do so by citing the words of the FMLA itself, but the statutory definition only proves why Teamsters Local 264 is not an employer. The statute's definition of an employer "includes – any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). Plaintiffs argue Teamsters Local 264 meets this description because of the Union's role in administering the mandate list and issued the memo announcing the policy change. Plaintiffs' Memo of Law in Opposition to Defendants' Motions to Dismiss ("Opposition MOL"), pp. 7-8. Along the same lines, Plaintiffs say *Eckert* is distinguishable because Teamsters Local 264 administered the mandate list and issued the memo – facts that were not present in that case. *Id*.

This fails. All Plaintiffs' attempts to distinguish *Eckert* and count the Union as an employer are founded on the position that Teamsters Local 264 acted "in the interest of" the Sheriff's Department when administering the mandate list and issuing the memo. This defies the record and the most basic premises of labor relations. Unsurprisingly, Plaintiffs cite no legal authority for such a position, since none exists. The Union is, of course, a labor organization that represents **the interests of its members**. Dickman Decl. ⁋ 1. As members' exclusive collective bargaining representative, the Union is either neutral with respect to the interests of the County Defendants

3

or, as is often the case, stands **in opposition** to the interests of the County Defendants when it comes to many matters affecting members' terms and conditions of employment.

Plaintiffs do not even attempt to offer an explanation of how the Union's actions in this case might have furthered the County's interests, let alone make the critical allegation that this was what motivated the Union in its conduct.  If there were any doubt, though, the Union's President explained the Union's motivations in issuing the memo: "In the interest of consistent treatment of all types of leave, and therefore in the interest of consistent and fair distribution of mandatory overtime among the Union's membership, the Union brought the operation of FMLA leave into alignment with all other types of leave available to Sheriff's Deputies."  Dickman Decl. ⸗ 8. Dickman also described how the Union's members were concerned that the increasing volume of mandatory overtime was out of sync with the CBA's requirements.  Dickman Decl. ⸗ 5.

Plaintiffs also attempt to equivocate the facts by claiming Teamsters Local 264 had some role in "discipline" regarding FMLA time and the change in policy at issue in this case.  Opposition MOL pp 7-8.  Plaintiffs again offer no explanation for the outlandish claim that deputies' labor organization was involved in disciplining its own members.  To state the obvious, the Union opposes the County's interests in disciplining its members.  Nothing in the Complaint's allegations or any facet of the record in this case even suggests that the Union acted "in the interest of" the County with respect to discipline – something Plaintiffs would have to prove in making its argument the FMLA's definition of employer includes the Union.  29 U.S.C. § 2611(4)(A)(ii)(I).

For the same reasons, Plaintiffs' claim that Teamsters Local 264's conduct here meant it "exercised sufficient authority over an essential employment function" to constitute the Union as an employer lacks any foundation and must be disregarded.  Opposition MOL p. 8.  Plaintiffs simply attempt to allege, for the first time, that a labor organization carrying out an administrative

4

task makes them an employer for purposes of the FMLA, without citing any legal authority to connect the Union's conduct here with the interests of the County Defendants.  Furthermore, affecting terms and conditions of employment, far from making unions count as employers, is a core characteristic of all unions, since their role is to advocate for the interests of their members and attempt to establish conditions of employment accordingly.  That advocacy takes place when a union bargains with an employer, with the two being on opposite sides of the bargaining table. *See* N.Y. Civil Service Law § 209-a (defining a public employer's duty to bargain with employees' labor union).  Plaintiffs' attempts to twist this dynamic into a finding that a union acts in the interests of an employer is therefore completely without support.

Furthermore, Plaintiffs cite no authority and offer no explanation for its apparent position that the conduct at issue here made Teamsters Local 264 an employer under the economic realities test.  *See Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 422 (2d Cir. 2016).  Rather, Plaintiffs simply recite the test by quoting from *Graziadio* and state baldly that the Union's actions here "are exactly the kinds of functions that [ ] bear directly on whether an entity" meets the test.  Opposition MOL pp. 8-9.  Plaintiffs, again, give no explanation for how Teamsters Local 264 met each of these elements.  They did not, and the Union is not an employer under the economic realities test either, as explained in Defendant's original Memorandum of Law in support of its motion.

As the Union's other submissions point out, other courts have followed the same pattern as this one did in *Eckert*, by granting motions for summary judgment made by labor unions accused of violating the FMLA.  *See*, *e.g.*, *Malone v. Securitas Sec. Servs.*, 2015 WL 5177549, at \*3 (N.D. Ill. Sept. 3, 2015), *aff'd sub nom. Malone v. Securitas Sec. Servs. USA, Inc.*, 669 F. App'x 788 (7th Cir. 2016) ("FMLA regulations do not extend to unions unless the union was the plaintiff's employer."); *Morgan v. Alachua Cnty.*, 2013 WL 4780128, at \*3 (N.D. Fla. Sept. 5, 2013) (listing

cases dismissing FMLA claims against unions on grounds unions were not employers under the FMLA); *Watkins v. Chicago Transit Auth.*, 2012 WL 580751, at *1 (N.D. Ill. Feb. 22, 2012) (dismissing claim against union, since union was not a statutory employer); *Frees v. UA Local Plumbers and Steamfitters*, 2008 WL 916970, *1 (W.D. Wash. 2008) (same).

Plaintiffs again attempt to distinguish these cases using the same argument described above – that Teamsters Local 264's conduct is categorically different when it helps administer the mandate list and when it issued the memo. Those attempts to distinguish fail for the same reasons above: Plaintiffs cite no legal authority for the claim that the conduct at issue was in the interest of the County Defendants; they cite no authority for the position such conduct otherwise makes a labor union an employer; and the argument attempts to ignore fundamental differences between the interests of labor unions and employers. As such, that authority is still applicable here.

Finally, Plaintiffs try to distinguish one such case, *Scamihorn v. General Truck Drivers*, by claiming Plaintiffs failed to cite the case in its full context. 282 F.3d 1078, 1081 n. 2 (9th Cir. 2002); Opposition MOL p. 10. Rather, the full quote Plaintiffs offer proves why the situation in that case was instructive here, and favors the Union. There, the Ninth Circuit noted the district court had granted the union's motion for summary judgment because it was not an employer under the FMLA, but allowed that the plaintiff could "state a claim against the Union **on another theory**" – i.e., a theory other than that the union was an employer under the FMLA, and could therefore be sued under the statute (something the plaintiff there did not subsequently attempt). *Id*. This does not help Plaintiffs' case here, since they argue Teamsters Local 264 **is** an employer under the FMLA. Again, that claim fails for the same reasons as in *Scamihorn*, *Eckert*, and the other authority above: Teamsters Local 264 did not act "in the interest of" the County Defendants, and Plaintiffs have not even alleged as much. *See* 29 U.S.C. § 2611(4)(A)(ii)(I).

For the foregoing reasons, the Union's motion should be granted in full.

## II.    THE MANDATORY OVERTIME PRACTICES COMPLY WITH THE FMLA, DEFEATING PLAINTIFFS' CLAIMS

### A.    The overtime practices comply with the FMLA.

Plaintiffs' remaining points regarding the merits of their FMLA claims also fail, for the reasons expressed in Teamsters Local 264's prior submissions, and the submissions of the Sheriff's Department.

Generally, under 29 C.F.R. § 825.209(h), "[a]n employee's entitlement to benefits other than group health benefits during a period of FMLA leave (e.g., holiday pay) is to be determined by the employer's established policy for providing such benefits when the employee is on other forms of leave (paid or unpaid, as appropriate)."

The policy at issue here is fully compliant with the FMLA because it treats employees who use intermittent FMLA leave in the same manner as employees utilizing other forms of leave, in all relevant senses.  Plaintiffs appear to draw a distinction between the question of whether the policy announced in the Dickman memo complied with the FMLA, and whether it counts as retaliation or interference of plaintiffs' rights.  Opposition MOL p. 11.  The Union submits this is another distinction without a difference.  If, as the US Department of Labor ("USDOL") appeared to conclude, the policy complies with the FMLA, this also means it cannot support legal claims of retaliation or interference.

As Defendants have pointed out, the USDOL communicated extensively with all the parties in this action, and an investigator with the agency gathered information about the policy, how it operated, and how that operation compared with how other types of leave worked.  *See* Hayes

7

Decl. ℙ 6.   While Plaintiffs disagree about whether this should count as an "investigation," (Plaintiffs' response to Defendants' Statement of Undisputed Facts, Dkt. No. 39(1)), they apparently do not disagree with Defendants' representations regarding the USDOL investigator, and the clear implication from their communication that the policy complied with the FMLA.

Employees remain at the top of Mandate List when they are excused from mandated overtime because they have either vacation or their regular day off scheduled for the next day. Dickman Decl. ℙ 4.   Employees move to the bottom of the list by: 1) working the mandated overtime shift; or 2) using a contractual pass.   *Id.*   Plaintiffs acknowledge and do not dispute this. Hayes Decl. ℙℙ 9, 14, 19, 24.

Defendants' treatment of individuals taking FMLA leave with respect to the Mandate List complies fully with FMLA's requirements because it is consistent with the "employer's established policy for providing such benefits when the employee is on other forms of leave." 29 C.F.R. § 825.209(h).   As the U.S. Department of Labor ("USDOL") has stated, "[t]he FMLA does not . . . entitle an employee to **superior benefits** or position simply because he or she took FMLA leave."   U.S. DOL, Opinion Letter FMLA2018-1-A at *2, 2018 WL 4678694 (August 28, 2018) (emphasis added) (citing 29 C.F.R. § 825.214, stating "an employee is entitled . . . to the same position the employee held when leave commenced, or to an equivalent position with equivalent benefits, pay and other terms and conditions of employment."); *see also* U.S. DOL, Opinion Letter FMLA-56, 1995 WL 1036727 (March 25, 1995); U.S. DOL, Opinion Letter FMLA2006-1-A, 2006 WL 2714662 (January 17, 2006) (policy requiring managers to vacate on-site lodgings while on FMLA leave did not constitute interference when the employer adopted a policy that provided similar treatment to employees on leave for both FMLA and non-FMLA reasons); U.S. DOL, Opinion Letter FMLA2018-1-A, 2018 WL 4678694 (August 28, 2018) (policy not counting

8

FMLA time towards years of service complied with FMLA when policy did the same with other types of leave).

Contrary to Plaintiffs (Opposition MOL p. 13), the mandated overtime policy here is functionally indistinguishable from the above examples, which were lawful.  The parties' disagreement about the weight of these opinion letters hinges on whether Plaintiffs here ask for a benefit under the FMLA.  They do, since they ask to be treated as if they worked the mandated overtime shift or used one of their contractual passes each time they use FMLA leave to avoid working the mandated overtime shift – the equivalent of dozens of passes under the CBA.  As with the policies the USDOL deemed lawful in the opinion letters, the mandated overtime policy here treats individuals taking FMLA leave the same as employees taking any other leave.

Plaintiffs seek benefits that are superior to those received by any other category of employee, and to which no Sheriff's Deputy is entitled under the FMLA, the CBA, or otherwise.  Since no source provides for the preferential benefits for which Plaintiffs ask, and since they are not entitled to them "simply because he or she took FMLA leave[,]" Plaintiffs' claims do not have merit.  U.S. DOL, Opinion Letter FMLA2018-1-A at *2, 2018 WL 4678694 (August 28, 2018).

### B.    Plaintiffs' interference claim fails.

To establish FMLA interference, a plaintiff must show, among other elements, "that he was denied benefits to which he was entitled under the FMLA." *Fraccica v. HSBC N.A. USA*, No. 20-CV-858-LJV-LGF, 2023 WL 7927969, at *5 (W.D.N.Y. Oct. 24, 2023), report and recommendation adopted, No. 20-CV-858-LJV-LGF, 2023 WL 7919182 (W.D.N.Y. Nov. 16, 2023) (internal punctuation modified); *DeLeon v. Teamsters Loc. 802, LLC*, No. 20-CV-24, 2021 WL 1193191, at *13 (E.D.N.Y. Mar. 29, 2021).

9

Plaintiffs cannot establish that they were "denied benefits to which [they were] entitled." *Id*. USDOL regulations recognize the type of policy change at issue here was valid, stating "[n]othing in this Act prevents an employer from amending existing leave and employee benefit programs, provided they comply with FMLA." 29 C.F.R. § 825.700. "An employer complies with the FMLA so long as it meets or exceeds the statute's minimum requirements." *Funkhouser v. Wells Fargo Bank, N.A.,* 289 F.3d 1137, 1140 (9th Cir.2002) (policy change as not violative because under the FMLA an employer is allowed to change its own programs as long as the employer meets or exceeds the FMLA's minimum requirements). Again, the new policy here treats FMLA time identically to any other type of leave.

Critically, courts have held a "plaintiff cannot maintain a cause of action under the FMLA for an employer's violation of its more-generous leave policy." *Weidner v. Unity Health Plans Ins. Corp.*, 606 F. Supp. 2d 949, 956 (W.D.Wisc. 2009) (no FMLA violation based on employer's policy that an employee may become eligible for 12 weeks of leave upon completing 1,000 annual hours) (gathering cases); *Rodriguez v. Bank of Am., N.A.*, No. 209-CV-1814PHXNVW, 2010 WL 2890219, at *4 (D. Ariz. July 21, 2010) (employer's failure to provide employee with an additional month of leave after exhaustion of her FMLA leave, as provided in the employees handbook, did not violate the FMLA); *Dolese v. Office Depot*, Inc., 231 F.3d 202, 203 (5th Cir.) (FMLA interference claim failed where employee was not employed for at least 12 months, even if the employer's policies provided for more generous eligibility for FMLA leave).

As such, Plaintiffs' contention that Defendants violated the FMLA by failing to comply with their prior practices, which provided superior benefits beyond those required by the FMLA, fails as a matter of law. Therefore, Teamsters Local 264's motion should be granted in full.

10

### C.   **Plaintiffs' retaliation claim fails.**

A plaintiff proves retaliation under the FMLA by establishing: "(1) he exercised rights protected under the FMLA; (2) he was qualified for [his] position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 204 (S.D.N.Y. 2009); *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012); *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004).

Plaintiffs cannot establish the third prong of their prima facia case – an articulable adverse employment action.  Under the FMLA, "a materially adverse action is any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising his [or her] legal rights." *Lamitie v. Middlesex Hosp.*, 380 F. Supp. 3d 197, 206 (D. Conn. 2019).  The Plaintiffs allege changes to the Mandate List put into place by the Memo constituted an adverse action.  Each of them, however, continued to utilize intermittent FMLA after the policy change, undermining their claim they have been dissuaded from exercising their FMLA rights.  Hayes Declaration ￢￢ 11, 16, 21, 25.

Plaintiffs also fail at the fourth prong of their prima facie case – "circumstances giving rise to a retaliatory intent." *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 204 (S.D.N.Y. 2009).  They allege little more than that Defendants retaliated against them by instituting a new practice, which Plaintiffs found objectionable.  Again, the Plaintiffs' position does not appear to make sense at root.  The policy change complied with the FMLA and afforded the Plaintiffs all rights to which they were entitled under the statute, treating every Sheriff's Deputy the same and all types of leave the same.  Given this, Plaintiffs are suggesting that Teamsters Local 264 and the other Defendants retaliated against them under the FMLA by following a practice that treated all

types of leave equally, including FMLA leave, continues to provide the benefits guaranteed by the law and the CBA.

Furthermore, the new policy is applied across all Deputy Sheriffs in the Holding Center, thus affecting all employees equally, defeating a claim the policy was directed as plaintiffs specifically. *See McIntyre v. Corning Inc.,* No. 15-CV-6277 CJS-MWP, 2019 WL 2140625, at *17 (W.D.N.Y. May 16, 2019) (dismissing retaliation claim where plaintiff could not show how company-wide change in compensatory time policy "was a retaliatory act against him."). Plaintiffs also cannot show a causal connection between any individual exercise by them of their FLSA rights and the policy change, and their claim of retaliation therefore fails. *See Mondaine v. American Drug Stores, Inc.*, 408 F. Supp. 2d 1169 (D. Kan. 2006) (employed failed to establish prima facie case of FMLA retaliation where he could not show a causal connection between taking FMLA leave and the employer's decision to change employee's work schedule).

Finally, even assuming Plaintiffs could make out a prima facie case (they cannot), Teamsters Local 264 has articulated legitimate non-discriminatory reasons for its policy change. As set forth in the Dickman Declaration, the Union's members were concerned the distribution of increased mandatory overtime violated the parties' CBA (Dickman Decl. ₱ 5), and the Union concluded it would be fairer to make all forms of leave operate in the same way (*Id.* ₱ 8). Ensuring equitable treatment is a legitimate, non-discriminatory reason sufficient to defeat any inference of discrimination.

## **CONCLUSION**

For the foregoing reasons, Teamsters Local 264 respectfully requests its motion for summary judgment be granted in full.

Dated:          January 14, 2026
                Buffalo, NY

                                                _Ian Hayes_____
                                                Ian Hayes

13